71 549
85 501
74 549
87 171

## NELSON T. PHILLIPS *vs*. WALLACE C. BROWN.

### Piscataquis. Opinion March 13, 1883.

*Officer's sale on execution. R. S., c. 91, § 27.*

When an execution issued on a judgment recovered under R. S., c. 91, § 27, is to be levied on a building standing on land in which the debtor has no legal interest, the general statutory provisions governing the levy of executions on personal property should be observed.

Generally, property sold on execution should be present at the place of sale, in order that persons desirous of purchasing may examine it; but a barn situated in a sparsely settled place, may in the absence of any unfair practices, be sold at some convenient place in its neighborhood, especially when the sale takes place in an inclement season of the year.

ON REPORT on agreed statement of facts.

Trover for the value of a barn. The writ was dated July 9, 1880. Plea, general issue.

The plaintiff purchased the barn at an officer's sale on execution. The following is the officer's return on the execution.

"Piscataquis, ss. On the fifth day of April, A. D. 1877, by virtue of the within execution, I have this day taken and seized as the property of the within named defendant, the goods and chattels, to wit: One small barn standing near William S. Knowlton's house between the Cove Slate Quarry and S. Bray's.

Levi C. Flint, Deputy Sheriff."

"Piscataquis, ss. On the fourteenth day of April, A. D. 1877, by virtue of this execution, on the fifth day of April, inst. I took

as the property of the within named Gilman W. Frost, one small barn or stable, being the same that was attached on the original writ, and having safely kept the same for the space of four days, and having on the eleventh day of April given public notice that said barn or stable would be sold at C. A. Packard's office in Monson, on the fourteenth day of April, at one and one-half o'clock, P. M. by posting up two notices of the said time and place of sale more than forty-eight hours before said time of the sale aforesaid, one at the Post Office, and one at the store of J. H. Pullen, two public places in said Monson. Pursuant to said notices, on the fourteenth day of April, at one and one-half o'clock, P. M. at C. A. Packard's office in said town of Monson, I sold said barn or stable by public auction to Nelson T. Phillips, he being the highest bidder therefor, for the sum of three dollars, from which sum I have deducted the lawful charges for keeping and selling said barn or stable, being two and forty-six one hundredths dollars, and the residue thereof being fifty-four cents, I have applied in part payment of this execution, and I return this execution not satisfied.

Levi C. Flint, Deputy Sheriff."

Other material facts stated in the opinion.

*Henry Hudson*, for the plaintiff.

*J. F. Sprague*, for the defendant, cited numerous authorities to the point that the officer's return must show definitely that he took all the steps necessary to constitute a sale. But the return does not show there was any keeper in possession. Nor does the return show that there was any delivery from the officer to the purchaser. There should have been a delivery of some kind to complete the sale. *Vining* v. *Gilbreth*, 39 Maine, 496 ; *Haskell* v. *Greely*, 3 Maine, 425 ; *Boynton* v. *Veazie*, 24 Maine, 286 ; *Wheeler* v. *Nichols*, 32 Maine, 233.

The property sold must be present at the time and place of the sale or it will be void. Freeman on Void Judicial Sales, § 31, and cases cited ; Freeman, Executions, § 290 ; Rorer on Judicial Sale, § 1283, and cases cited ; Cowan on Attachments, 611, and cases cited.

VIRGIN, J. Trover to recover the value of a certain barn, the title to which is involved. The case comes before us on an agreed statement, from which it appears that the barn was erected by one Frost, on land of another, with the latter's consent. The plaintiff brought an action to enforce his lien for materials furnished in its construction and recovered judgment thereon, on March 9, 1877. The return of the officer on the execution issued on the judgment shows, that on April 5, following, he seized the barn, and having safely kept it for the space of four days, and given the proper notices therefor, he sold it, on April 14, to the plaintiff, he being the highest bidder. Hence the plaintiff's title.

The case also finds that Frost, who erected and owned the barn, sold it to one Knowlton, who also sold it to the defendant. This constitutes all of the evidence of the defendant's title. The date of neither of these sales is disclosed, although very material. For if Frost's sale to Knowlton was subsequent to the seizure on execution, then assuming the officer's sale to have been regular, the plaintiff would be entitled to prevail. If, however, Frost's sale to Knowlton was prior to the officer's seizure, then the title would depend upon facts which the case does not affirmatively disclose, viz : whether the plaintiff's attachment was seasonably made, and was kept alive until the seizure, by the officer's retaining possession by himself or keeper, or by filing the certificate prescribed in R. S., c. 81, § 24. But, from the fact that the defendant confines his objections to matters which took place subsequent to the seizure and in the absence of anything appearing to the contrary, assuming that, everything necessary to enforcing the lien prior to and including the seizure, was properly done, we come to the defendant's objections to the officer's proceedings thereafter.

I. It is urged that the return does not show that, after the seizure, the officer placed a keeper over the barn or filed a certificate under the provisions of R. S., c. 81, § 24.

The answer is that neither of these facts needs to appear — especially when his return recites that " he safely kept " the barn. The certificate is usable only in case of attachment.

II. It is also contended that the phrase "enforced as before provided," in the first clause of the last sentence of R. S., c. 91, § 27, means that the execution shall be levied on a building, erected on land in which "the debtor has no legal interest," and is therefore personal estate, in the same manner as when he owns both land and building, and is therefore real estate. We do not so understand the provisions of this section. The phrase, "as before provided," refers to the phrase a few lines above — "enforced by attachment." The latter phrase is repeatedly used in the same chapter, prescribing the mode of initiating proceedings for continuing a lien beyond the statutory period of ninety days after the lienor has finished his work or furnished his materials, so that no subsequent sale or attachment shall intervene against him who had added value to the property on which a lien is given. Moreover section twenty-seven contains no provision prescribing the mode of executing the judgment by means of an execution, whether the property to which the lien attaches is real or personal; but leaves that to the general statutory provisions regulating the levy of executions, with the additional provision in section twenty-seven, that when the execution is levied on land and building, the "appraisers may set out a suitable lot," etc.

III. Again, it is said that the sale is void for the reason that it did not take place at the barn, but at an office, three-quarters of a mile distant, and not visible, therefrom. It did take place, however, at the place fixed in the notices.

The law, doubtless, requires auction sales of this nature to be conducted openly and fairly in all respects, with the property present or so near to the place of sale that it may be conveniently examined by persons desirous or willing to purchase it. This is especially essential, when the property comprises a variety of chattels, each of which is to be sold separately. And any conduct of the officer or creditor tending to show any questionable practices in this regard, like refusing, or neglecting on request, to exhibit property to be sold, and giving reasonable time for its examination, will vitiate the sale. But property like a barn, situated as this was, which every body in the vicinity of

it and likely to purchase it, must have frequently seen and known ever since its erection, may, in the absence of any evidence tending to impeach the fairness of the sale, be sold at some convenient place in its neighborhood, especially when the sale takes place at such an inclement season of the year. We see no rational distinction in this respect, whether the place of sale of *such* property is fixed, in the first instance, within a reasonable distance of the property, or the sale is adjourned to such a place for want of bidders. *Russell* v. *Richards*, 11 Maine, 371, 375, and cases there cited. Such an adjournment to any place in the same town is now allowed by R. S., c. 84, § 6.

There is no evidence or suggestion of unfairness in the sale, unless the small price at which the barn was bid off be so considered. This can have no probative force, inasmuch as there is no other evidence of its real value. And assuming that the barn was struck off for a very small sum compared with its intrinsic value, this mere fact is no cause for avoiding a fair sale at public auction, ( *Webster* v. *Calden*, 53 Maine, 203 ; *Fowle* v. *Coe*, 63 Maine, 245, 252) ; more especially when the inadequacy of the price finds ample explanation in the fact, demonstrated by the bringing of this action, that the title of the barn was in question and no one desired to bid off a law suit. We do not think the cases cited by the defendant are in conflict with the foregoing. In accordance with the stipulation in the case, the entry must be,

> *Defendant defaulted. Damages*
> *to be assessed at Nisi Prius.*

APPLETON, C. J., WALTON, DANFORTH, PETERS and SYMONDS, JJ., concurred.